# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHAEL FRANK KAFER,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV 15-038-RAW-KEW |
| | ) |
| **JIMMY MARTIN, Warden,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.[1] Petitioner, a state prisoner in the custody of the Oklahoma Department of Corrections, is challenging his conviction in Okmulgee County District Court Case No. CF-2011-012 for Assault with a Dangerous Weapon (Count 1) and Second Degree (Felony) Murder (Count 2). He raises the following grounds for relief:

I. The trial court erred by refusing to instruct the jury on negligent homicide, misdemeanor manslaughter, and second degree manslaughter.

II. The trial court erred in failing to instruct on self-defense.

III. Failure to give a limiting instruction on the use of impeachment evidence was not harmless beyond a reasonable doubt.

IV. The trial court failed to instruct on excusable homicide.

V. The trial court erred in admitting photographs of the decedent at the crime scene when there was no issue regarding her death.

---

[1] Petitioner is represented by counsel.

VI. The cumulative effect of the errors raised resulted in reversible error and a fundamentally unfair trial.

Respondent concedes in the response to the petition that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. Petitioner has not filed a reply to the response.

The following records have been submitted to the Court for consideration in this matter:

A. Petitioner's direct appeal brief.

B. The State's brief in Petitioner's direct appeal.

C. Petitioner's appellate reply brief.

D. Summary Opinion affirming Petitioner's judgment and sentence. *Kafer v. State*, No. F-2012-535 (Okla. Crim. App. Sept. 25, 2013).

E. Petitioner's petition for rehearing in the Oklahoma Court of Criminal Appeals.

F. Order Denying Petition for Rehearing.

G. Transcripts

H. State court record.

**Facts**

Petitioner was convicted of the murder of his sister-in-law, Mary Beth "Penny" Kafer, which occurred on January 16, 2011. The record shows that on that date Petitioner's brother, James Kafer, and Penny drove to the farmhouse of James and Petitioner's mother in Okmulgee County. James and Penny went to the farmhouse to meet their son John Kafer and

John's wife, Sheena. James, Penny, John, and Sheena entered the farmhouse to retrieve a couch for James and Penny's daughter, Jane Ann. (Tr. III, 148-49, 200-01).

While James, Penny, John, and Sheena were in the house, James saw Petitioner drive his blue Ford flatbed farm truck to the house. James went outside on the porch. Petitioner parked and exited his truck and asked James what he was doing. James replied that he was getting a couch for Jane Ann. The two brothers continued to talk, and James walked across the porch and onto the grass to hear what Petitioner was saying. (Tr. III, 204, 206-08).

Petitioner asked James where Petitioner's nailer was, and James asked Petitioner about the location of a chainsaw. The verbal exchange continued as James approached Petitioner. Petitioner had his hands up, and it appeared to James that Petitioner was going to hit him. James slapped Petitioner's right cheek with his left hand, and the two continued arguing. (Tr. III, 208-09).

Penny, Sheena, and John had remained in the house, but when Petitioner and James started arguing, Penny asked John to go outside and break them up. James declined until his mother asked again. John then went outside where Petitioner and James were pushing each other and arguing. John stood between them, and stopped the physical confrontation, but the arguing continued. (Tr. III, 159-60).

Petitioner testified that James was screaming to fight him, but Petitioner refused. Petitioner got in his truck and slowly began to back it down the driveway. James began walking in the driveway, while John and Penny stood on the side of the road by the gate.

3

Petitioner was backing his truck in the direction of his own house, which was east of the farmhouse. James picked up a rock weighing about half a pound from the road and flung it up in the air in the direction of the truck. The rock hit the driver's-side mirror or the mirror brace on the truck, and Petitioner stopped. James and Petitioner, who were approximately ten to fifteen yards apart, then resumed "mouthing" at each other. (Tr. III, 114, 161-65, 212-15).

Petitioner started revving his engine, blowing dust everywhere. He then punched the accelerator and began driving forward down the road, straight at James. Penny left John's side at the gate and ran after James, yelling "Jimmy, Jimmy, Jimmy." With the truck coming straight at him, James faked a step to the left and then jumped hard to the right, narrowly missing being struck head-on. As the truck went past James, the driver's side mirror hit him on his left arm, and he fell to the ground. (Tr. III, 165-69, 193, 220-21).

At the same time, John watched as his mother, Penny, was struck by Petitioner's truck. Penny's body wrapped around the front of the truck, and her head and arms went down on the hood. Her body was thrown five to six feet, as she rolled underneath the truck. Her body cleared the truck bed just as the truck stopped. (Tr. III, 168-69).

James got up from the ground and saw Penny lying on the ground behind the truck with one shoe off. Penny's right cheek was in the dirt, and when James turned her over, he saw blood in her mouth. James attempted to perform CPR, and Penny gurgled as he blew into her mouth. He pressed on her chest, and her ribs were "crunchy." James then called

4

911. (Tr. III, 221-223, 262).

Okmulgee County EMS worker Vester Joe Williams arrived on the scene in response to the call. He and his partner found Penny lying face down and examined her to assess her condition. She had no pulse, was not breathing, and had turned blue. She had suffered a crush injury to the back of her head, trauma to her back, and obviously broken ribs. There were no resuscitation efforts, and she was pronounced dead on the scene. (Tr. III, 44-50).

Dr. Joshua Lanter, a forensic pathologist hired by the State of Oklahoma, performed the autopsy on Penny Kafer. Her external injuries included scratches on the right side of her face, with abrasions and bruises on her arms, hands, legs, chest, abdomen, and back. She had multiple rib fractures, and her sternum and her vertebral column also were fractured (Tr. IV, 68, 72, 74, 76-81).

Ms. Kafer's other injuries included lacerations through the wall of her heart and bruising on the back of her lungs, which were almost cut in half. Her liver was lacerated, and her spleen was fragmented. She also had hemorrhaged inside her chest. All of her injuries were consistent with having been struck by a vehicle, and her cause of death was blunt force trauma. Dr. Lanter concluded that her manner of death was homicide (Tr. IV, 81-82, 84, 86-87).

On the evening of the murder, Petitioner stated to police that he drove the truck at James to scare him, because James had assaulted him and thrown a rock at the truck (State's Exhibit No. 2, Dkt. 10-6 at 2; Tr. IV, 144). At trial, however, Petitioner claimed his intent

5

in stopping the truck and changing gears from reverse to drive and driving toward James was to get away from James and to scare James (Tr. IV, 157, 159). Petitioner admitted at trial that he would have hit James, if James had not jumped out of the way (Tr. IV, 176).

**Grounds I, II, and IV: Jury Instructions**

Petitioner alleges the trial court erroneously refused to instruct the jury as he requested. Respondent asserts these claims raise issues of state law which are not cognizable in a federal habeas corpus action.

> "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981), *cert. denied*, 525 U.S. 852 (1998)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

*Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

### *Ground I: Lesser-Included Offenses*

Petitioner alleges in Ground I of the petition that the trial court erred by refusing to instruct the jury on negligent homicide, misdemeanor manslaughter, and second degree manslaughter. On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") found no evidence supporting Petitioner's requested lesser-included instructions and that the trial

court did not err in refusing to instruct as Petitioner requested. *Kafer v. State*, No. F-2012-535, slip op. at 2-3 (Okla. Crim. App. Sept. 25, 2013) (Dkt. 9-5).

The Supreme Court and the Tenth Circuit have never recognized a federal constitutional right to a lesser-included offense instruction in a non-capital case. *Tiger v. Workman*, 445 F.3d 1265, 1268 (10th Cir. 2006) (quoting *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004)). *See also Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) ("A petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'") (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)). Precedents by the Tenth Circuit "establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Tiger*, 445 F.3d at 1268 (quoting *Dockins*, 374 F.3d at 938). Because this is a non-capital case, Petitioner cannot establish entitlement to habeas corpus relief. Therefore, this claim must be denied.

### *Grounds II and IV: Self-Defense and Excusable Homicide*

Petitioner alleges in Ground II that the trial court improperly refused to give his requested self-defense instruction. In Ground IV he claims the trial court improperly refused to give his requested instruction on excusable homicide. On direct appeal the OCCA held that the trial court did not abuse its discretion in refusing to give either instruction, because there was no evidence to support the requested instructions. *Kafer*, slip op. at 3-4, 6.

7

Petitioner alleges the trial court's failure to instruct on the issues of self-defense and excusable homicide was erroneous. He has not asserted in the petition, nor did he claim in his state-court proceedings, that the failure to instruct violated his rights to due process or a fundamentally fair trial. Therefore, Petitioner has alleged only a violation of state law which does not present a constitutionally cognizable claim for this Court.

"The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). *See also Frey v. Leapley*, 931 F.2d 1253, 1255 (8th Cir. 1991) ("Failure to give an appropriate theory-of-defense instruction, without more, is not a violation of the Due Process Clause."). Grounds II and IV of the petition are meritless.

**Ground III: Impeachment Evidence**

In his third ground for relief, Petitioner claims the trial court erroneously failed to give his requested instruction on the proper use of impeachment evidence, and this alleged error was not harmless. The record shows that on cross-examination, the prosecutor impeached Petitioner with a prior written statement (Tr. IV, 144-48). In addition, two of the prosecution's witnesses, Sheena Kafer and James Kafer, were impeached by their prior

inconsistent statements (Tr. III, 137-39, 256-60). Defense counsel requested Instruction 9-20, OUJI-CR 2d for the two prosecution witnesses, but the trial court denied the request (Tr. V, 13).[2] Defense counsel did not request the instruction for Petitioner.

Petitioner presented this issue on direct appeal, claiming that despite his failure to request the instruction for his own testimony, the trial court should have given the instruction with regard to his own allegedly impeached testimony, as well as for the allegedly impeached testimony of Sheena Kafer and James Kafer. The OCCA denied relief:

> We find . . . the trial court should have given a limiting instruction on the use of impeachment evidence. Kafer requested this instruction as to two witnesses, and we review for abuse of discretion. *Cipriano v. State*, 32 P.3d 869, 873 (Okla. Crim. App. 2001). He did not request an instruction for his own testimony, and we review for plain error. Because the alleged error concerns the Confrontation Clause, we determine whether it was harmless beyond a reasonable doubt. *Neder v. United States*, 527 U.S. 1, 15-16 (1999); *Chapman v. California*, 386 U.S. 18, 24 (1967); *Barnard v. State*, 290 P.3d

---

[2] The proposed jury instruction provides:

Evidence has been presented that on some prior occasion (the defendant)/[Name of Witness]) (made a statement)/(acted in a manner) inconsistent with his/her testimony in this case. This evidence is called impeachment evidence and it is offered to show that the defendant's/witness's testimony is not believable or truthful. If you find that (a statement was made)/(the acts occurred), you may consider this impeachment evidence in determining what weight and credibility to give the testimony of (the defendant)/(the witness). You may not consider this impeachment evidence as proof of innocence or guilt. You may consider this impeachment evidence only to the extent that you determine it affects the believability of the defendant/witness, if at all.

[However, if you find the statements of (the defendant)/([Name of Witness]) were made [Specify When, Where, and To Whom the Statements Were Made], the statements may also be considered as proof of innocence or guilt.]

OUJI-CR 2d 9-20.

9

759, 764 (Okla. Crim. App. 2012). A witness may be impeached with prior inconsistent statements. *Douglas v. State*, 951 P.2d 651, 676 (Okla. Crim. App. 1977); *Dennis v. State*, 561 P.2d 88, 93 (Okla. Crim. App. 1977); Okla. Stat. tit. 12, § 2613. Unsworn prior inconsistent statements may be used for impeachment, but not as substantive evidence of guilt, and impeachment must be accompanied by a limiting instruction (OUJI-CR 2d 9-20). *Lewis v. State*, 970 P.2d 1158, 1169 (Okla. Crim. App. 1998); *Omalza v. State*, 911 P.2d 286, 302 (Okla. Crim. App. 1995). Both the witnesses' prior statements were from depositions made under oath. As the State argues, they are not hearsay and are usable as substantive evidence of guilt. *Omalza*, 911 P.2d at 301; Okla. Stat. tit. 12, § 2801(B)(1)(a). A party's own statements, offered against him, are not hearsay. *McElmurry v. State*, 60 P.3d 4, 19 (Okla. Crim. App. 2002); Okla. Stat. tit. 12, § 2801(B)(2)(a). Failure to give a limiting instruction on impeachment is not necessarily a plain error. *Williams v. State*, 188 P.3d 208, 222-23 (Okla. Crim. App. 2008). Three eyewitnesses saw Kafer try to run down James Kafer and hit the victim instead, and Kafer admitted he intended to drive at James and would have hit him had he not moved. We conclude beyond a reasonable doubt that the error did not affect the verdict. *Barnard*, 290 P.3d at 764.

*Kafer*, slip op. at 4-5.

Petitioner argues in his habeas petition that the error was not harmless beyond a reasonable doubt. Respondent claims habeas relief is not warranted, because any error in the failure to give the instruction had no substantial or injurious effect on the jury's determination and was, therefore, harmless beyond a reasonable doubt.

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

10

proceeding.

28 U.S.C. § 2254(d).

In applying this standard of review, "the threshold question is whether there exists clearly established federal law, an inquiry that focuses exclusively on holdings of the Supreme Court." *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (citations omitted). "If clearly established federal law exists, a state court decision is contrary to it only if the court 'contradicts the governing law' or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court.'" *Littlejohn v. Trammell*, 704 F.3d 817, 825 (2013) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006)). *See also Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (same). Finally, the AEDPA requires this court "to give significant deference to state court decisions." *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013) (citation omitted). "This 'highly deferential standard' . . . demands that state-court decisions be given the benefit of the doubt," *Hooks*, 689 F.3d at 1163, and such deference is required "[e]ven if a state court resolves a claim in summary fashion with little or no reasoning." *Paine v. Massie*, 339. F.3d 1194, 1198 (10th Cir. 2003).

The Supreme Court has held that when a state court finds a constitutional error harmless, the proper inquiry for a federal habeas court is whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

*See also Littlejohn*, 704 F.3d at 844-45 (holding that "the relevant harmless error inquiry in habeas cases is "whether . . . a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict"). "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists if "the matter is so evenly balanced that . . . [the court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

The *Brecht* standard applies to habeas corpus cases regardless of whether or not the state court recognized error and reviewed it under *Chapman v. California*, 386 U.S. 18 (1967). *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*."). Thus, this Court only reviews the claim under the *Brecht* standard and not under the AEDPA's "contrary to" or "unreasonable application of" test as it would be superfluous to apply both. *See Fry*, 551 U.S. at 120 ("[I]t certainly makes no sense to require formal application of *both* tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former."). Finally, the habeas court's review of constitutional error found by the OCCA is *de novo*. *Littlejohn*,

704, F.3d at 844-45.

Claims regarding jury instructions are subject to harmless-error analysis. *Hedgepeth v. Pulido*, 555 U.S. 57, 61-62 (2008). Here, the OCCA held the failure to give an instruction on impeachment was harmless error that did not affect the verdict. *Kafer*, slip op. at 5. The OCCA found that three eyewitnesses saw Petitioner attempt to run down his brother James, but hit James' wife Penny instead. *Id.* Petitioner "admitted he intended to drive at James," and if James had not moved, Petitioner would have hit him. *Id.* Respondent contends that any error was harmless given the circumstances and the overwhelming evidence of Petitioner's guilt.

The State introduced Petitioner's original written statement to the police (State's Exhibit 2) during the testimony of former Holdenville Police Officer Michael Johnson (Tr. III, 75). Petitioner's statement described the incident between himself and James as follows:

> I got in the truck to leave and was backing up when he threw a rock at the truck hitting it. I put it [in] gear stepping on the gas and Penny run [sic] in front of the truck thinking I was going to hit James Kafer my brother which I never would have. There has been an ongoing argument between my brother and me since our Mom was put into the rest home. I am truly sorry.
>
> I was just trying to scare him because he threw a rock an [sic] assaulted me. I had no intentions of hitting anybody.

(State's Exhibit 2, Dkt. 10-6 at 2).

At trial, Petitioner testified he drove his truck directly toward James Kafer to get away from James (Tr. IV, 139-41). On cross-examination, however, Petitioner testified that as he drove toward James, he would have hit James if James had not moved out of the way (Tr. IV,

13

176). James Kafer confirmed he was struck by the truck's driver's-side mirror which knocked him to the ground (Tr. III, 220). Therefore, even if the jury had been instructed not to consider Petitioner's previous statement to the police as substantive evidence of guilt, the jury still had Petitioner's own trial testimony which was ample substantive evidence of his intent and guilt. Respondent argues it was not the jury's use of Petitioner's pretrial statement as substantive evidence that convicted him; it was instead the evidence presented against him at trial and the fact that Petitioner's trial testimony was inconsistent with the facts and his previous statement. The Court finds that in light of Petitioner's own testimony and admission, he has not shown that the trial court's instructional error had a substantial and injurious effect or influence in determining the jury's verdict against him. *See Brecht*, 507 U.S. at 638-39 (finding that in light of "weighty" and circumstantial evidence pointing to the petitioner's guilt, any error that occurred did not substantially influence the jury's verdict).

The Court further finds that the failure to give the instruction with respect to the testimony of Sheena Kafer and James Kafer also did not have a substantial or injurious effect in determining the jury's verdict. On direct examination, Sheena Kafer testified that James Kafer was approximately ten to fifteen yards away from Petitioner when James threw the rock at Petitioner's truck (Tr. III, 114). On cross-examination, defense counsel attempted to impeach Sheena with an allegedly inconsistent statement she made in her February 3, 2012, deposition in which she testified that James Kafer was "[a]bout between five and ten yards away" . . . before [Petitioner] started to go forward" (Tr. III, 138-39).

14

Sheena also testified that after James threw the rock at Petitioner, who was driving away in reverse, Petitioner stopped the truck and again had words with James before revving the engine which made the back tires spin and kicked up dirt and rocks (Tr. III, 113-16). After a period of sitting there and revving the engine, Petitioner punched the accelerator and drove forward toward James, who was in the middle of the driveway (Tr. III, 116-17).

The Court finds Sheena's testimony clearly demonstrated Petitioner's intent to commit the assault and battery of James Kafer, and the distance between James and Petitioner's truck when the rock was thrown was inconsequential. Therefore, an instruction to the jury not to consider Sheena's earlier testimony for its substantive value would have had no effect on the jury's determination of guilt. *Brecht*, 507 U.S. at 638-39.

The same is true with respect to James Kafer's testimony. James testified on direct examination that when Petitioner drove the truck straight at him, he faked a step to the left and then jumped hard to the right (Tr. III, 218). As the truck passed by James, the driver's-side exterior mirror hit his left arm and knocked him to the ground (Tr. III, 220). Sheena Kafer also testified that James appeared to have been hit by the truck (Tr. III, 123-24).

On cross-examination of James Kafer about his initial reaction immediately after he was hit by the side mirror on the truck, defense counsel asked, "You were going to holler at him that you missed me, right?" (Tr. III, 256-57). James Kafer responded, "I was going to holler something at him and probably that you didn't hit me with the front of the truck" (Tr. III, 257). Defense counsel then attempted to impeach James with his deposition testimony

15

of February 24, 2012, where he testified, "I recall raising up, wanting to tell him that he had missed me. I looked over and I saw my wife . . . ." (Tr. III, 257-58).

The Court finds the evidence of what James Kafer was going to yell about whether Petitioner hit him or not could not have affected the jury's ultimate determination of guilt. Sheena Kafer testified that it appeared James was hit by something as the truck passed him (Tr. III, 123). In light of the testimony and other evidence presented at trial, the Court finds the failure to instruct the jury not to consider the impeaching testimony as substantive evidence of guilt could not have had a substantial or injurious effect on the jury's determination of guilt. *Brecht*, 507 U.S. at 638. For the reasons set forth above, Ground III of this habeas petition fails.

**Ground V: Prejudicial Photographs**

Petitioner next claims the trial court improperly admitted gruesome photographs of the victim. Petitioner asserts the victim's death was not contested, and the photographs of her body were more prejudicial than probative in the context of the trial evidence. The OCCA denied relief on this claim in Petitioner's direct appeal:

> We find . . . the trial court did not abuse its discretion admitting photographs of the victim at the crime scene. *Pavatt v. State*, 159 P.3d 272, 290 (Okla. Crim. App. 2007). We look to see whether the photographs are relevant and if their probative value is substantially outweighed by their prejudicial affect [sic]. *Jones v. State*, 201 P.3d 869, 885 (Okla. Crim. App. 2009). Kafer argues that he admitted running over Penny, and the medical examiner testified as to her internal injuries, so the pictures were unnecessary and cumulative. He argues that they were also duplicative. The pictures, which were not gory, corroborated testimony about the commission of the crime and Penny's injuries. *Pavatt*, 159 P.3d at 290. They were not unnecessarily hideous or

16

> repulsive to the extent that they would produce an unfair impact on a jury. *Livingston v. State*, 907 P.2d 1088, 1094 (Okla. Crim. App. 1995). The photographs are not cumulative because they all show separate images, without needless repetition. *Warner v. State*, 144 P.3d 838, 887 (Okla. Crim. App. 2006).

*Kafer*, slip op. at 6.

The admission of photographs is an issue of state law, and "[f]ederal habeas review is not available to correct state law evidentiary errors . . . ." *Wilson v. Sirmons*, 536 F.3d 1064, 1114 (10th Cir. 2008) (citations omitted). The Supreme Court has held that a habeas petitioner is only entitled to relief under the due process clause when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).

In this ground for habeas relief, Petitioner does not claim the trial proceedings were rendered fundamentally unfair, nor does he cite any authority where habeas corpus relief was granted because of gruesome photographs. He, therefore, has raised only a state-law issue which is not cognizable in this habeas action. *McGuire*, 502 U.S. at 67-68. *See also Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (acknowledging that claim of admission of gruesome photographs, without more, is an issue of state law not cognizable on habeas review), *cert. denied*, 531 U.S. 833 (2000). Habeas relief cannot be granted for this claim.

**Ground VI: Cumulative Error**

Finally, Petitioner alleges the cumulative effect of the errors raised in the petition

resulted in reversible error and a fundamentally unfair trial. Petitioner raised this issue on direct appeal, and the OCCA denied relief:

> We find . . . that no cumulative error requires relief. We found . . . that the failure to give a limiting instruction on impeachment evidence was harmless beyond a reasonable doubt. We found no other error. There is no cumulative error where a single error has been addressed. *Bell v. State*, 172 P.3d 622, 627 (Okla. Crim. App. 2007).

*Kafer*, slip op. at 6.

> "In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). "[A]s the term 'cumulative' suggests, . . . we undertake a cumulative-error analysis only if there are at least two errors." *Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012).

*Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013), *cert. denied*, 134 S.Ct. 176 (2013).

Here, the OCCA found only one harmless error in Petitioner's claim concerning a limiting instruction on the use of impeachment evidence. *Kafer*, slip op. at 5. With only one harmless error, cumulative-error analysis is not implicated. *Lott*, 705 F.3d at 1223.

The Court finds the OCCA's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). The Court further finds the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented at trial. *See* U.S.C. § 2254(d)(2). This claim for habeas relief also must be denied.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). He also has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 2) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 14th day of March 2018.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma